## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

RODNEY HINGLE                                                        CIVIL ACTION

VERSUS                                                              NO.  13-4876

ROBERT TANNER, CCE, WARDEN,                                         SECTION "I"(4)
22nd JUDICIAL DISTRICT COURT


### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Rodney Hingle ("Hingle"), is a convicted inmate currently incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2]  On June 7, 2010, Hingle was charged by Bill of Information in St. Tammany Parish with one count of simple burglary of an inhabited dwelling and one count of possession of a legend drug without a prescription.[3]  The drug

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. 3.

[3]St. Rec. Vol. 1 of 4, Bill of Information, 6/7/10.

in this case was identified as Tramadol.[4]  Hingle entered a plea of not guilty to the charges on June 28, 2010.[5]

The record reflects that, on Sunday, April 11, 2010, Cleveland Lewis, Sr., left his mobile home in Lacombe, Louisiana, to go to church.[6]  At around 9:30 a.m., while he was away, Hingle used a screwdriver to gain entry into the mobile home through one of the doors.  Once inside, Hingle took Lewis's money, including bills and rolls of coins, and his prescription medicine bottle containing Tramadol.

A neighbor saw Hingle break into Lewis's home and called the police.  By the time Hingle tried to exit the mobile home, Deputy Victoria Dombrowski, with the St. Tammany Parish Sheriff's Office, had arrived and stopped Hingle.  The Deputy retrieved from Hingle's person a screwdriver, the bottle of Tramadol, and the money.

Hingle was tried before a jury on September 27 and 28, 2010, and was found guilty as charged on both counts.[7]  At a post-trial motion hearing held on September 29, 2010, the State filed a multiple bill to which Hingle entered a plea of not guilty.[8]

On October 21, 2010, Hingle withdrew his prior plea and the pending motion to quash the multiple bill, admitted the allegations in the multiple bill, and was adjudicated a fourth felony

---

[4]Tramadol is a synthetic pain reliever, also known as Ultram, and is similar to morphine.  *Physicians' Desk Reference*, (68th ed. 2014).

[5]St. Rec. Vol. 1 of 4, Minute Entry, 6/28/10.

[6]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  *State v. Hingle*, 90 So.3d 543 (La. App. 1st Cir. 2011) (Table); *State v. Hingle*, No. 2011-KA-0325, 2011 WL 4436536, at *1 (La. App. 1st Cir. Sep. 14, 2011); St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2011-KA-0325, pp. 2-3, 9/14/11.

[7]St. Rec. Vol. 1 of 4, Trial Minutes, 9/27/10; Trial Minutes, 9/28/10; Trial Transcript, 9/27/10; St. Rec. Vol. 2 of 4, Trial Transcript (continued) 9/27/10; Trial Transcript, 9/28/10.

[8]St. Rec. Vol. 1 of 4, Multiple Bill, 9/29/10; Minute Entry, 9/29/10.

offender.[9]  The Trial Court sentenced him as a multiple offender to serve concurrent sentences of thirty (30) years in prison at hard labor on each count without benefit of probation or suspension of sentence.[10]  The Court later denied Hingle' motion to reconsider the sentences.[11]  On November 29, 2010, Hingle's request to withdraw his plea to the multiple bill was denied by the Trial Court for lack of jurisdiction.[12]

On direct appeal, Hingle's appointed counsel argued that the evidence was insufficient to support the conviction for possession of Tramadol.[13]  The Louisiana Fourth Circuit affirmed Hingle's conviction, habitual offender adjudication, and sentences on September 14, 2011, finding no merit in the arguments raised.[14]

The Louisiana Supreme Court denied Hingle's related writ application without stated reasons on February 17, 2012.[15]  His convictions and sentences became final ninety (90) days later, on May 17, 2012, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

---

[9]St. Rec. Vol. 1 of 4, Multiple Bill Hearing Minutes, 10/21/10.

[10]*Id.*

[11]St. Rec. Vol. 1 of 4, Motion to Reconsider Sentence, 9/29/10; Trial Court Order, 10/28/10.

[12]St. Rec. Vol. 1 of 4, Minute Entry, 11/29/10; Motion to Withdraw Plea of Guilty, 11/3/10 (dated 10/31/10).

[13]St. Rec. Vol. 4 of 4, Appeal Brief, 11-KA-0325, 3/9/11.

[14]*Hingle*, 90 So.3d at 543; *Hingle*, 2011 WL 4436536, at *1; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2011-KA-0325, 9/14/11.

[15]*State v. Hingle*, 82 So.3d 282 (La. 2012); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2011-KO-2187, 2/17/12; La. S. Ct. Writ Application, 11-KO-2187, 10/7/11 (dated 10/1/11).

On July 12, 2012, Hingle submitted an application for post-conviction relief to the Trial Court in which he asserted two (2) grounds for relief:[16]  (1) he was denied effective assistance of counsel where counsel (a) allowed the State to introduce irrelevant and prejudicial evidence in violation of the Confrontation Clause, (b) failed to adequately investigate to locate any potential witnesses, and (c) failed to object to the prosecutor's introduction of evidence without scientific analysis or expert testimony and prepare for trial; and (2) the Trial Court erred by severing the offenses.  The Trial Court denied relief without stated reasons on July 19, 2012.[17]

Hingle sought review in the Louisiana First Circuit raising only the claims of ineffective assistance of counsel.[18]  The Court denied the application without stated reasons on October 9, 2012.[19]  The Louisiana Supreme Court also denied without stated reasons Hingle's related writ application seeking review of the denial of relief on both post-conviction issues on April 1, 2013.[20]

## II.  **Federal Petition**

On July 10, 2013, the clerk of this Court filed Hingle's federal petition for habeas corpus relief in which he raised the following grounds for relief:[21] (1) he was denied effective assistance of counsel where counsel (a) allowed the State to introduce irrelevant and prejudicial evidence in violation of the Confrontation Clause which resulted in his conviction based on insufficient

---

[16]St. Rec. Vol. 3 of 4, Uniform Application for Post-Conviction Relief, 7/19/12 (dated 7/12/12); Memorandum in Support, 7/19/12.

[17]St. Rec. Vol. 3 of 4, Trial Court Order, 7/19/12.

[18]St. Rec. Vol. 4 of 4, 1st Cir. Writ Application, 2012-KW-1350, 8/7/12.

[19]St. Rec. Vol. 4 of 4, 1st Cir. Order, 2012-KW-1350, 10/9/12.

[20]*State ex rel. Hingle v. State*, 110 So.3d 578 (La. 2013); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2012-KH-2428, 4/1/13; La. S. Ct. Writ Application, 12-KH-2428, 11/14/12 (dated 11/3/12).

[21]Rec. Doc. No. 3.

evidence, (b) failed to adequately investigate to locate any potential witnesses, and (c) failed to object to the prosecutor's introduction of evidence without scientific analysis or expert testimony and prepare for trial; and (2) the Trial Court erred by severing the offenses.  He also argues that the state courts should have held an evidentiary hearing before denying his post-conviction application.

The State filed an answer and memorandum in opposition to Hingle's petition conceding that the petition was timely filed and that the claims were exhausted in the state courts.[22]  The State argues, however, that the claims are without merit and that the petition should be dismissed with prejudice.

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[23] applies to this petition, which is deemed filed in this court under the federal mailbox rule on June 18, 2013.[24]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies

---

[22]Rec. Doc. Nos. 10, 11.

[23]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Hingle's federal habeas petition on July 10, 2013, when the filing fee was paid after denial of pauper status.  Hingle dated his signature on the petition on June 18, 2013.  This is the earliest date appearing in the record on which Hingle could have presented the pleadings to prison officials for mailing to a court.

and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record confirms that Hingle's petition is timely filed.  Although the Court questions the thoroughness of Hingle's exhaustion of the severance argument not raised to the Louisiana First Circuit, the State contends that the claims are exhausted.  Any discrepancy or variance in Hingle's efforts to exhaust does not prevent the Court from addressing the petition where the claims are without merit.  28 U.S.C. § 2254(b)(2).  The record also does not reflect that any of the claims are in procedural default.  Therefore, the Court will address the substance of his claims.

## IV.   <u>Standards of Review of the Merits</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable

application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting

*Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).   In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

**V.    Analysis**

**A.    Evidentiary Hearing Not Warranted**

Hingle alleges that the state courts erred in denying him post-conviction relief without an evidentiary hearing.   He also arguably suggests that he now should be granted a hearing on the merits of his claims in this federal court.

The decision of the state courts to rule without an evidentiary hearing is not reviewable.   It is well settled that "infirmities in State habeas proceedings do not constitute grounds for relief in federal court."   *Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir. 2001).   An attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and is not the actual detention, which is the focus in federal habeas.   *Id.*, at 320; *see also*, *Drevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *see also*, *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 402-403 (2001) (no constitutional mandate that states provide post-conviction review) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (no constitutional right to state post-conviction review)).

Furthermore, to the extent Hingle requests a federal evidentiary hearing, his request must be denied.   As discussed by the Supreme Court in *Cullen*, 131 S. Ct. at 1400-01, the decision to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of § 2254(e)(2).   That provision restricts federal evidentiary hearings to those instances where the habeas claim relies on a new rule of law retroactively applied on collateral review for which the predicate could not have been previously discovered with due diligence and where the facts would be

sufficient to undermine a guilty verdict by clear and convincing evidence. *See Cullen*, 131 S. Ct. at 1400-01. The Court in *Cullen* further recognized that where these factors are not met, evidence presented for the first time on federal habeas review may not be considered when addressing the merits of the claims under § 2254(d)(1). *Id.*

Thus, the federal habeas court is limited to review of only the evidence and record before the state courts that reviewed the claim at issue. *See Cullen*, 131 S. Ct. at 1400; *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011); *Gallow v. Cooper*, 505 F. App'x 285, 295-96 (5th Cir. 2012); *Thomas v. Thaler*, No. 12-50280, 2013 WL 1297269, at *4-*5 (5th Cir. Apr. 2, 2013). In other words, this Court does not consider evidentiary materials that were not first presented to the state courts.

As addressed in the following discussion, Hingle is not entitled to federal habeas relief on either of his claims. He, therefore, has made no showing of entitlement to relief from his conviction by clear and convincing evidence. He also has not based his claim on a new, retroactive rule of law as recognized under the provisions of § 2254(e)(2). There is no reason to grant an evidentiary hearing in this case. This request is meritless.

### B. Effective Assistance of Counsel (Claim No. 1)

Hingle alleges that he was denied the effective assistance of counsel when his counsel allowed the State to introduce irrelevant and prejudicial evidence in violation of the Confrontation Clause and which resulted in his conviction being based on insufficient evidence to prove that he had Tramadol. In connection with this claim, under a broad reading, Hingle alleges that counsel did not adequately challenge the testimony of the officers who testified about the medication as a legend drug, meaning a drug that requires a prescription. Hingle claims that counsel erred when he failed

to object to the prosecutor's introduction of this evidence without scientific testing, a certificate of analysis or expert testimony.  He also contends that counsel erred in stipulating that the drug was Tramadol when it was never chemically tested to support the State's witness testimony.  He further complains that counsel failed to investigate the case which resulted in a failure to identify witnesses to be called at trial, all of which prejudiced the defense.

The State argues that Hingle can not meet the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and he is not entitled to relief.

Hingle raised these arguments on post-conviction review, and the state courts denied relief without stated reasons.

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).  The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, is the appropriate standard for judging the performance of counsel.  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore,

"[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 792. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S. Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.,* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

Hingle complains that his counsel allowed the State to introduce "irrelevant and prejudicial" evidence in violation of his rights under the Confrontation Clause and which resulted in his conviction being based on insufficient evidence. Although he uses the phrase "Confrontation Clause," Hingle admittedly is claiming that his counsel should not have stipulated to the identity of the medication as being Tramadol where the State did not have the medication scientifically tested. He further argues that counsel did not adequately challenge the testimony of the officers who testified about the medication as one being a legend drug.

The record reflects, however, that counsel did not stipulate to the identity of the pills as being Tramadol. To the contrary, counsel objected to the prosecutions characterization of the pills found in the bottle as Tramadol, and that objection was sustained by the Trial Court.[25] The only stipulation agreed to by counsel was that there was <u>no</u> chemical analysis of or testing done on the pills found in the bottle.[26] This left the State with the burden of proving to the jury beyond a reasonable doubt that the pills were in fact Tramadol.

To do so, the State relied on the testimony of the arresting officer, Deputy First Class Victoria Lisa Dombrowski, who first identified the pills, and the victim Lewis, who identified the

---

[25]St. Rec. Vol. 2 of 4, Trial Transcript (continued), p. 199, 9/27/10.

[26]*Id.*, at p. 203.

pictured bottle and medication as his Tramadol pain medication.[27]  To raise doubt in the jurors' minds, Hingle's counsel questioned Deputy Dombrowski on cross-examination to establish that she had never been qualified as an expert on drug identification even though she was the first one to identify the drugs at the time of arrest using a police reference manual.[28]  She also testified that, after taking pictures of the bottle and the pills, they were returned to Lewis without any testing because he needed to take the prescription medication.  She did not keep any of the pills or request testing of the pills before returning them.

On redirect, the prosecutor attempted to rehabilitate Deputy Dombrowski by having her explain how she identified the medication using the "Drug Identification Bible for Law Enforcement."[29]  She located the markings etched into the pills, in this case "AN627," and used the manual to look-up that code to find the name of the medication that correlated to that marking.  She also testified that the manual provided a description of the ingredients, the appearance of the medication, its purpose and use, the brand or equivalent, and the control.  She defined "control" to mean whether the product was a prescription medication or listed on the controlled dangerous substance schedules I and  II.[30]

Because there was no stipulation from the defense, the State also called Captain Harry O'Neal as an expert in identification and analysis of controlled dangerous substances and drugs.[31]  Captain O'Neal based his identification of the medication on the pictures taken at the time of

---

[27]*Id.*, at pp. 216, 219.

[28]*Id.*, at pp. 203-04.

[29]*Id.*, at p. 205.

[30]*Id.*, at pp. 205-06, p. 221 (Lewis).

[31]*Id.*, at pp. 235, 237.

Hingle's arrest.  He explained that he used the markings on the tablet to determine that the medication was Tramadol, which also was the medication indicated on the prescription label on the outside of the bottle.  He did so using the "Drug Identification Bible" which he believed to be more comprehensive that a Physicians' Desk Reference guide to medication.[32]  He acknowledged, however, that the manufacturer indicated on the prescription label was not the same as the manufacturer indicated in his Drug Identification Bible.  He had no independent knowledge by which to confirm whether the companies were related.[33]

On cross-examination, defense counsel had Captain O'Neal restate the fact that he did not chemically test the pills.[34]  Counsel also had the Captain confirm that he only based his opinion on the police photographs taken of the pills and the prescription bottle.[35]

Clearly, Hingle's counsel did not stipulate that the pills retrieved were in fact Tramadol.  He questioned the State's witnesses in an effort to undermine the non-chemical identification made by the officers.  This left the jury to decide whether the State met its burden of proof.  Thus, Hingle's initial argument is factually baseless and otherwise fails to establish any deficiency in counsel's performance regarding his challenge to the identification of the medication.

The Court also is not swayed by Hingle's suggestion that counsel should have presented other evidence to raise doubt about the identity of the medication.  Counsel's "'[f]ailure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be

---

[32]*Id.*, at pp. 238-39, 242-343.

[33]*Id.*, at pp. 240-42.

[34]*Id.*, at pp. 244-45.

[35]*Id.*, at p. 245.

unwise.'" *Williams v. Cockrell*, 31 F. App'x 832 (5th Cir. 2002) (*quoting Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)).  It is also noteworthy that, in Louisiana, the law does not limit the nature of the evidence that can be used to prove the drug to be a prescription medication.  *Cf. State v. Williams*, 101 So.3d 533, 536 (La. App. 4th Cir. 2012) (citing La. Rev. Stat. § 40:991(A), which states that production of the original prescription bottle with the person's name, the pharmacist's name, and prescription number is sufficient proof of a valid prescription).  Counsel therefore had no basis to object to the State's use of the pill coding and bottle instead of chemical testing to prove the medication's identification.  *See Green v. Johnson*, 160 F.3d 1029, 1037-38 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

Further, the cross-examination by counsel demonstrated that he was well-prepared and held the knowledge necessary for the attack on the State's medication identification testimony, including that of the State's expert Captain O'Neal.  *See Bowers v. Quarterman*, 497 F.3d 459, 472 (5th Cir. 2007) (citing *Dees v. Caspiri*, 904 F.2d 452, 455 (8th Cir. 1990) ("Counsel had a duty to garner the expertise necessary to cross examine [the state's expert].").  Based on the record, it also is reasonable to conclude that defense counsel strategically chose to undermine the State's evidence through cross-examination at trial rather than risk bringing in another expert or other evidence that may have confirmed the State's findings to the detriment of Hingle's defense.  "Unless a crucial and important legal issue rests on the reliability of scientific evidence, . . . counsel is not constitutionally required to seek out a contradictory expert so long as the decision not to call an expert is informed

and based on a strategic decision." *See Bowers v. Quarterman*, 497 F.3d 459, 472 (5th Cir. 2007). The decision not to call an expert under the circumstances of this case was well within counsel's trial strategy discretion. *Dees*, 904 F.2d at 454-55.

Furthermore, Hingle has not established that there was or is an expert to testify that the well-marked tablets were anything other than Tramadol. Without such a showing, he has failed to raise a basis for this claim. *See Tinsely v. Million*, 399 F.3d 796, 806 (6th Cir.), *cert. denied*, 546 U.S.1044 (2005) (defendant presented no evidence suggesting that "there were experts to be had" who would have contradicted State's experts; "conclusory allegations that such experts exist" are insufficient to show counsel was ineffective in failing to hire a defense expert). Hingle has not established that counsel's performance fell below these constitutional standards. "A conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999). Affording trial counsel's strategic decisions the due deference required by the applicable law, his decision not to introduce other evidence or call a scientific expert was not deficient performance.

Hingle further claims that counsel failed to investigate his prior drug use or his competence at the time of the burglary which resulted in a failure to identify witnesses to be called which prejudiced the defense. "'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" (citation omitted) *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998). In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. *Diaz v.*

*Quarterman*, 239 F. App'x 886, 890 (5th Cir.2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").  Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed.  *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

In this case, the only matters Hingle addresses is that further investigation would have shed light on his prior drug use and his competence at the time of the burglary.  Hingle does not indicate that he made any attempt to inform counsel of his alleged prior drug use or gave him any reason to question his competence at the time of the burglary.  He also has not specified or provided any tangible information that he in fact had a drug abuse problem that would have affected his competence at the time of the burglary.  His generalized claims remain wholly unsupported and conclusory.  *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").  This is not sufficient to establish a deficiency in counsel's performance.  *Moawad*, 143 F.3d at 948.

Furthermore, Hingle has not demonstrated that counsel failed to investigate sufficiently to locate witnesses for the defense.  "'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"  *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (*quoting Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).  "'Failure to

18

present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" *Williams v. Cockrell*, 31 F. App'x 832 (5th Cir. 2002) (*quoting Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)).  In this case, Hingle has not identified any particular witnesses nor has he suggested to what any potential witnesses may have testified.  He therefore has failed to establish a deficient performance or prejudice arising from counsel's actions.

For all of the foregoing reasons, the state courts' denial of relief on the issue of ineffective assistance of counsel was not contrary to, or an unreasonable application of, *Strickland*.  Hingle is not entitled to relief on any facet of his claim.

### C.     <u>Prosecution of Separate Charges (Claim No. 2)</u>

Hingle complains that the state trial court erred in allowing the charges to be "severed" for trial when the possession of the Tramadol was actually an element of the burglary charge.  The State argues that the joinder of the charges was proper and that Hingle has not established that he was exposed to double jeopardy.  Hingle raised this issue on post-conviction review and the state courts denied relief at each level without stated reasons.

In reviewing Hingle's arguments under a broad reading, the true nature of his claim is that his possession of Tramadol was actually the theft element of the simple burglary charge and should not have been charged in the bill of information as a separate count.  Further, if the charges were two counts, they should not have been presented to the jury in the same trial to avoid confusion.  Based on these allegations, the Court will address this claim as one urging a violation of the right against double jeopardy and urging the improper joinder of the charges.

1. **No Double Jeopardy**

A double jeopardy claim raises a mixed question of law and fact for purposes of this Court's federal habeas review. *Carlile v. Cockrell*, 51 F. App'x 483, 2002 WL 31319380, at *1 (5th Cir. 2002) (applying the AEDPA's mixed question standard to a double jeopardy claim); *Johnson v. Karnes*, 198 F.3d 589, 593 (6th Cir. 1999) (same).

The Double Jeopardy Clause of the Fifth Amendment protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). Under the third prong, as in Hingle's claim, punishment for the same offense is determined by "whether each provision requires proof of an additional fact which the other does not." *Brown*, 432 U.S. at 166 (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

In *Blockburger*, the United States Supreme Court determined that if each charged offense contains an element that is not contained in the other, the charges are <u>not</u> considered to be the same offense and are <u>not</u> barred under the Double Jeopardy Clause. *See Blockburger*, 284 U.S. at 304. To meet this test, the Court must "compare the criminal statutes at issue and inquire whether each provision requires proof of an additional fact that the other does not." *United States v. Singleton*, 16 F.3d 1419, 1442 (5th Cir. 1994) (citing *Blockburger*, 284 U.S. at 304); *United States v. Fisher*, 106 F.3d 622, 632 (5th Cir. 1997) ("Double jeopardy concerns are not raised if each crime charged requires an element of proof the other crimes charged do not."); *accord Bias v. Ieyoub*, 36 F.3d 479, 480 (5th Cir. 1994).

In this case, Hingle was charged under two distinct statutes with simple burglary of an inhabited dwelling and possession of the legend drug Tramadol. Under Louisiana law, to prove

20

simple burglary of an inhabited dwelling, the State must prove the defendant entered a home or dwelling without authorization and with the intent to commit a theft or felony therein.  La. Rev. Stat. Ann. § 14:62.2.  *State v. Nelson*, 25 So.3d 905 (La. App. 2d Cir. 2009).  A conviction for possession of a legend drug like Tramadol requires the State to prove that the defendant possessed the legend drug without the order or prescription of a physician or licensed health care practitioner.  La. Rev. Stat. Ann. 40:1238.1.

The burden of proof on the State demonstrates that these crimes each require the State to prove distinct elements in order to achieve a conviction.  To be in possession of the Tramadol, the State did not have to prove that Hingle did anything other than have it.  To establish the burglary, the State had to prove that Hingle entered the trailer without Lewis's permission with the intent to commit a felony or theft.  The fact that Hingle actually took the money and medicine was not a required element of the burglary charge.  Instead, Louisiana law would find that the simple burglary was completed when Hingle entered the trailer, and the possession of Tramadol did not occur until Hingle took possession of the medicine and left the trailer.  The Louisiana courts have found that a defendant can be charged with simple burglary of an inhabited dwelling and separately with the possession of the items that were stolen in the burglary.  *Accord State v. Spikes*, 66 So.3d 40, 42-43 (La. App. 2d Cir. 2011) (finding that simple burglary and possession of stolen goods taken in the burglary were two separate charges under *Blockburger*) (citing *State v. Vincent*, 387 So.2d 1097 (La. 1980)).

Considering the foregoing, Hingle has not established that the two charges violated the prohibition against double jeopardy.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, federal law.  Hingle is not entitled to relief on this claim.

2.    <u>No Severance of Charges</u>

Having established that the charges were validly placed against Hingle, the Court must now consider Hingle's contention that the charges should not have been tried together.  Questions of joinder and severance of charges are typically matters of state law and do not implicate constitutional questions unless they result in prejudice so great as to violate the Fifth Amendment right to a fair trial.  *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986).  Whether a defendants' Fifth Amendment due process rights to a fair trial were violated is a mixed question of law and fact. *Beckwith v. Anderson*, 89 F. Supp.2d 788, 795 (S.D. Miss. 2000).

Louisiana law provides for the joinder of criminal charges in one bill of information or indictment where there are common circumstances:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

La. Code Crim. P. art. 493.

In addition, La. Code Crim. P. art. 493.2 also permits joinder of criminal charges based on sentencing exposure:

> [O]ffenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

In Louisiana, "the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall

prosecute." La. Code Crim. P. art. 61.  The prosecutor's decision to join criminal charges in a bill of information is generally not subject to objection by the defense.  *See State v. Brooks*, 541 So.2d 801, 810-11 (La. 1989) (citing La. Code Crim. P. art. 61 as providing broad discretion to the district attorney in determining whether to sever counts in an indictment); *State v. Burnett*, No. 2007-KA-2523, 2008 WL 2064975, at *3-4 (La. App. 1 Cir. 2008) (unpublished) (finding that the district attorney has the discretion to prosecute offenses separately or in aggregate) (citing *State v. Joles*, 492 So.2d 490, 495 (La. 1986) (addressing joinder of theft counts)).  However, "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."  La. Code Crim. P. art. 495.1; *State v. Burks*, 905 So.2d 394, 399 (La. App. 5th Cir. 2005).  A defendant claiming prejudice has a heavy burden to prove that severance of the charges is warranted.  *State v. Jones*, 33 So.3d 306, 325 (La. App. 5th Cir. 2010) (citing *Burks*, 905 So.2d at 399).

In Hingle's case, the record discloses no requirement under state law that the two counts in the bill of information be severed and tried separately as a matter of law.  Hingle was charged with and eventually convicted of the felonies simple burglary of an inhabited dwelling and possession of Tramadol.  A felony, under Louisiana law, "is any crime for which the offender may be sentenced to death or imprisonment at hard labor."  La. Rev. Stat. Ann. § 14:2.  For the simple burglary charge, Hingle faced a sentence of imprisonment "at hard labor for not less than one year, without benefit of parole, probation or suspension of sentence, nor more than twelve years."  La. Rev. Stat. Ann. § 14:62.2.  For possession of Tramadol, he faced imprisonment "with or without hard labor, for not more than five years and may be sentenced to pay a fine of not more than five thousand dollars."

La. Rev. Stat. Ann. § 40:1238.1(C).  The charges against Hingle were both felonies punishable at hard labor and arising from a common activity or event.  The charges therefore could be brought in the same bill of information.

Furthermore, under Louisiana law, "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood the jury will be confused by the evidence of more than one crime."  *State v. Lewis*, 557 So.2d 980, 984 (La. App. 4 Cir. 1990).  In determining whether joinder of two or more offenses would result in prejudice, the Louisiana courts consider the following factors:

> (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the defendant would be confounded in presenting his various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, considering the nature of the charges, the charging of several crimes would make the jury hostile.

*State v. Lewis*, 736 So.2d 1004, 1015 (La. App. 4th Cir. 1999).

Hingle has not established that the jury was impacted in any of the ways listed above.  Neither Hingle nor the record demonstrates that the jury was confused or made hostile by the counts or the evidence.  As noted above, proof of the crimes did not involve common or confusing elements.  Having failed to make a showing of jury prejudice, Hingle has not identified any error in the joinder of the charges against him that would have warranted action by the state trial court or objection by his counsel.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, federal law.  Hingle is not entitled to relief on this claim.

## VI.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Rodney Hingle's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[36]

New Orleans, Louisiana, this 16th day of April, 2014.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[36]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.